**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | | |
|---|---|---|---|
| In re: | ) | Case No.: | 17-29195 |
| | ) | | |
| Cleveland L. Carr | ) | Chapter: | Chapter 13 |
| | ) | | |
| Debtor, | ) | Judge: | Hon. Deborah L. Thorne |
| | ) | | |

**RESPONSE TO TRUSTEE'S OBJECTION TO APPLICATION FOR COMPENSATION**

NOW COMES Geraci Law L.L.C. ("Geraci") through its undersigned counsel and in response to the Chapter 13 Trustee Marilyn O. Marshall's Objection to Application for Compensation, states as follows:

**Introduction**

This is the Debtor's first bankruptcy filing. The Trustee now objects to Geraci's fees under the CARA prescribed by the Court, claiming that Geraci engaged in improper conduct. The Trustee's objection is without merit for myriad reasons. First, Geraci represents the debtor, not the "bankruptcy estate." Second, Geraci followed the law and the rules of this Court. As more fully explained below the Court should overrule the Trustee's objection.

**Background**

On September 29, 2017, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 101. [Doc. 1]. When Debtor first met with Geraci attorney Christine Kuhlman on September 14, 2017, he had received a lawsuit summons from Capital One, was one month delinquent on his mortgage, and was two months delinquent on his car loan with Exeter Finance

1

on a 2012 Ford Edge. The monthly payment on Debtor's car loan was $667.44 for 72 months, with an interest rate of 13.95%. Additionally, Debtor's home had equity which could not be protected in a Chapter 7, so Debtor chose to proceed with filing a Chapter 13. After meeting with Debtor a second time, Attorney Kuhlman determined that since the Edge was a "non-910" vehicle, Debtor could "cram down" the balance of the 2012 Ford Edge from $25,150.24 to $14,600, and that the house was titled jointly with his non-filing spouse, so she prepared and filed his Plan, which proposed to pay his general unsecured creditors a minimum of 23% of their claim over a term of 48 months.

The plan also proposed that the vehicle would get set payments equal to the amount of adequate protection on the true value until debtor's attorney fees were paid. In other words, the plan pays the only secured creditor a set payment equal to the adequate protection payments. After attorney fees are paid in full, it then gives the vehicle the entire plan payment, less the trustee fee. Therefore, the plan pays the secured portion of the vehicle claim within 39 months. Had the plan not been structured in this manner, it could take 57 months to pay the crammed value at a set payment for both fees and the vehicle. (Ex. A.)

**Argument**

Instead of moving to dismiss the case or objecting to confirmation, the Trustee invites this Court to disallow the Debtor's attorneys' fees for five (5) equally meritless reasons: 1) There is no benefit to the estate; 2) There must be an additional unfiled agreement between Geraci and Debtor; 3) Geraci should not be paid prior to the secured creditors; 4) The case is likely to be dismissed,

putting a greater burden on the debtor after that; and 5) There is a conflict of interest between Geraci and Debtor.

### A. The Code Provides Only that Debtor's Counsel owes a Duty to the Debtor, not the Estate.

The Trustee asks this Court to deny Geraci's fees because paying attorney fees before secured claims does not benefit the Estate. Trustee Obj. pp. 4-6. This argument ignores the plain language of the Code. When interpreting a statute the starting point is the statutory language itself. *Toibb v. Radloff*, 501 U.S. 157, 162 (1991). When the statutory text is plain and does not lead to an absurd result, the sole function of the courts is to enforce the plain language of the statute. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004).

The Trustee cites 11 U.S.C. § 330(a)(4)(A), but ignores the first sentence of the statute: "***Except as provided in subparagraph (B)***, the court shall not allow compensation for— (ii) services that were not— (I) reasonably likely to benefit the debtor's estate." (emphasis added).

Subparagraph B states:

> In a chapter 12 or ***chapter 13 case in which the debtor is an individual***, the court may allow reasonable compensation to the debtor's attorney ***for representing the interests of the debtor*** in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section. 11 U.S.C. § 330(a)(4)(B) (emphasis added).

In a Chapter 13 debtor's counsel is compensated for representing the debtor, *not* the bankruptcy estate. The trustee repeatedly questions what benefit there is to the bankruptcy estate while ignoring the fact that it is not debtor's

3

counsel's job to provide a benefit to the estate; rather, counsel's job is to represent the debtor.

A review of Chapter 13 cases filed in this district would show that most attorneys will agree to file a Chapter 13 "no money down" and receive payments on their fee through the plan. However, if attorneys cannot get paid for their work until years later, as the Trustee proposes, many attorneys will not take such Chapter 13 cases without attorneys' fees being paid up front. Without adequate representation available to prospective filers, there would likely be a dramatic increase in *pro se* debtors. It is no secret that Chapter 13's are difficult for *pro se* debtors to navigate. It is also a fact that the Bankruptcy Help Desk has very limited availability for *pro se* debtors due to lack of volunteers. If the Court sustains the Trustee's objection it will place an unfair burden on those Debtors seeking Chapter 13 relief and on the pro se help desk. For this reason alone the Court should overrule the Trustee's objection.

**B.    There is no Unfiled Agreement between Debtor and her Attorneys**

The Trustee argues that Debtor's attorneys are in violation of Second Amended General Order 11-2. That Order relates to agreements between Debtor and attorney for fees, not to terms plain on the face of *every* Chapter 13 Plan, such as how the Trustee is directed to disburse payments. The CARA is filed. An additional retainer agreement is filed.[1] The Plan is filed. Debtor's filed Chapter 13 Plan states how plan payments are disbursed, just as every Chapter 13 plan

---

[1] A review of the docket shows the majority of firms file only the CARA in Chapter 13 cases. Geraci files a separate retainer as well to fully disclose all agreements regarding fees pursuant to Amended General Order 11-2.

4

does in every Chapter 13 case. No separate "agreement" exists and therefore, nothing else is required to be filed by the Code, Rules, or Local Rules. If the Court wishes to amend the General Order again, certainly compliance with whatever it says is fine with Geraci. In fact, since the Trustee has raised this point, Geraci has instituted a separate disclosure in response to the Trustee's speculation about some mysterious *sub rosa* agreement regarding terms plainly set forth in the Plan.[2]

### C. The Bankruptcy Code Permits Debtor's Counsel to be Paid Prior to Secured Creditors

The Trustee also argues that there is no *requirement* to pay attorneys' fees before secured claims. This is true. But the Code contemplates paying attorneys first. Debtors' attorney's fees are both administrative expenses under § 503(b)(2) and priority claims under §507(a)(2). The Code even affirmatively states that debtor's attorney's fees may be paid before other creditors:

> The debtors' attorney's fees are administrative expenses under § 503(b)(2) and priority claims under § 507(a)(2)... The question of their distribution priority in chapter 13 is settled by § 1326(b)(1) which states that "[b]efore or at the time of each payment to creditors under the plan, there shall be paid — (1) any unpaid claim of the kind specified in section 507(a)(2)." Section 1326(b)(1) simply means that those priority claims **may be paid before other creditors are paid** or at the same time.

*In re Willis*, 460 B.R. 784, 791 (Bankr. D. Kan. 2011) (Emphasis added).

---

[2] Subsequent to the first time Trustee Marshall raised this issue, Geraci began the practice of having debtors sign a document titled "13 Acknowledgement," which is now filed with the petition. Ex. B. This was not done because Geraci believed the disclosures were insufficient, but it is Geraci's belief that you cannot have too much disclosure.

5

The Trustee is attempting to convince this Court that there is something improper about a plan that proposes to pay attorney fees in full before other creditors, while ignoring the fact that there is a specific mechanism in the Code that provides, in very specific terms, for the treatment that the Trustee objects to.

Bankruptcy courts routinely pay attorney fees while creditors receive only adequate protection payments. For example, in *In re Caesars Entertainment Operating Company, Inc.*, out of this district, the Court may take judicial notice that Debtor's counsel was awarded 5 separate orders for interim compensation totaling over $68 million dollars before the case was confirmed.[3] See Docket on 15-01145.

The Trustee argues that this plan with step payments means that secured creditors will not be paid as quickly as they would have otherwise have been. This is factually inaccurate. A plan that proposes to pay a secured creditor a set payment simultaneously with payments on attorney fees will typically pay off the secured claim *later* than they would with a plan that steps payments. (See Exhibit A). Although the Trustee may question what benefit the "estate" derives from this, the benefit to both the debtor and the vehicle creditor is clear: the vehicle is paid off more quickly. No creditor should object to that, and Exeter did not object to their treatment in this case; only the Trustee objected to this treatment in this case, for reasons unsupported by law or facts.

---

[3] In a Chapter 11, as in a Chapter 13, no payments are made to creditors prior to confirmation unless otherwise ordered by the court.

6

**D. There is no Increased Likelihood of Dismissal. A Secured Creditor gets Paid Faster with a Step Plan, after Attorneys' Fees are Paid. There is no Causal Effect of this Plan on Dismissal Rates.**

The Trustee argues there is a high rate of dismissal in Chapter 13 cases filed in this district. There is no reference to any facts or record to support this claim. Any "high" rate of dismissals is skewed by pro se cases, which are often dismissed within 6 months, and rarely get confirmed. The Geraci firm obtains confirmation, and indeed discharge, in a high number of cases. Their work for debtors like this one is why debtors succeed, not why they fail. The fact that the Trustee has no objection to confirmation pending demonstrates that the filing was warranted and in good faith.

The Trustee suggests that this plan will fail because the vehicle will get paid after attorneys' fees, a schema which benefits the creditor so long as, in this case, the vehicle does not get wrecked or stolen, or break down, and the debtor remains employed, and does not suffer illness or other disaster. Those occurrences are why cases get dismissed. It has little to do with adequate protection and step payments. It has more to do with whether the Debtor is employed or retired, and on payroll control or not.

The Supreme Court said: "[i]n our view, however, Congress intended to create a program under which plans that qualify for confirmation have a high probability of success." *Till v. SCS Credit Corp.*, 541 US 465, 482 (2004). This is the case here: ready to be confirmed, no objections other than this, and on payroll control. It is disingenuous for the Trustee to assume it will be dismissed. Several courts in this district have noted that debtors on payroll control are more

7

likely to have a successful Chapter 13. *See In re Bivens*, 317 B.R. 755,766 (Bankr. N.D. Ill. 2005) (noting that payroll control is "the greatest and most pragmatic mechanism for insuring successful consummation of a Chapter 13 plan."); *In re Marks*, 394 B.R. 198, 207 (Bankr. N.D. Ill. 2008) (noting that payroll control significantly decreases the possibility of default as long as a debtor remains employed); *In re Torres*, 191 B.R. 735, 737 (Bankr. N.D. Ill. 1996) (noting that being on payroll control can make the difference between success and failure of a Chapter 13).

Finally, there is an inherent flaw to the Trustee's argument that a dismissal or conversion harms a debtor with a step in payments to secured creditors more than a debtor without such step payments. As stated *supra*, if the case is confirmable, the Court should assume that the case will complete successfully. The majority of Chapter 13 cases fail because the Debtor is either unable to or unwilling to make the payments.[4] If a debtor cannot afford to make their plan payments, they would therefore be unable to get current on their secured collateral. When a Chapter 13 fails, there is inevitably money owed to the secured creditors, regardless of the point at which the failure occurs. Predicting failure when everything points to success is not a basis to sustain the Trustee's objection.

---

[4] The other primary cause for dismissals is for a debtor's failure to provide tax returns or turn over tax refunds. However, the number of cases dismissed for these reasons is significantly less than the number dismissed for lack of payments, which is evident from reviewing the Chapter 13 dockets.

8

### E. There is no Evidence of Any Conflict of Interest

The Trustee argues there is a conflict of interest *because* there is a high rate of dismissals in this district. This argument is completely undeveloped, made without foundation, and is therefore waived. There is no evidence of a "high rate of dismissals," and the Debtor's interest is best served by having competent counsel who can afford to stay with the case.

The Trustee cites the *Liou* case, which detailed a panoply of fraud and deceit of one attorney who no longer practices law, and another who is now deceased. See Trustee Objection p.5 n.4. The insinuation that there is, here, anything remotely similar to the *Liou* case is both misleading and insulting. In *Liou*, debtor's attorney filed claims in subsequent 13's for his fees in prior dismissed 13's, by assigning them to another attorney to disguise them. *In re Liou*, 503 B.R. 68-69 (Bankr. N.D. Ill. 2013). Additionally, the Court found that Mr. Liou counseled clients to file Chapter 13 cases rather than Chapter 7 cases that would have been in their best interests. *Id.* at 70-72. Clearly, the actions taken by Liou were against his client's interest, and benefited no one other than himself.

Finally, under Trustee Marshall's theory, the only time there is no conflict is if the secured creditor receives ALL plan funds before debtor's counsel receives anything. However, this treatment is expressly forbidden by the Code. Again, we look to § 1326(b): "Before or at the time of each payment to creditors under the plan, there **shall** be paid— (1) any unpaid claim of the kind specified in section 507(a)(2) of this title." 11 U.S.C. § 1326(b)(1) (emphasis added). The use of the

9

word "shall" in a statute indicates a command to do something. *Anderson v. Yungkau,* 329 U.S. 482 (1947). The plain language of § 1326(b) commands the trustee to make a payment on debtor attorney fees out of every payment disbursed, as long as there remains a balance.

## Conclusion

The Trustee's objection finds no support in the Code, the law, or the facts. The Code specifically permits the treatment proposed in the Plan, and there is no conflict of interest, and no objection to the Plan, which should be confirmed.

WHEREFORE, Geraci Law L.L.C. respectfully requests this Court overrule the Trustee's Objection to Compensation, grant the application for compensation, and Confirm this Plan.

                                        By:   */s/ Nathan E. Curtis*
                                                  Nathan E. Curtis

Geraci Law L.L.C.
55 E. Monroe # 3400
Chicago, IL 60603
312.499.6201