IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 17-29195 |
| | ) | |
| Cleveland L. Carr, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Honorable Deborah L. Thorne |
| | ) | |
| In re: | ) | Case No. 17-25013 |
| | ) | |
| Antoinette L. Lindsey, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Honorable Deborah L. Thorne |

## MEMORANDUM OPINION

### Introduction

Cleveland L. Carr ("Carr") and by Antoinette L. Lindsey ("Lindsey") are both chapter 13

debtors and have proposed plans providing that their respective attorneys, Peter Frances Geraci

Law, LLC ("Geraci") and The Semrad Firm, LLC ("Semrad") be paid before their secured auto

lenders. The chapter 13 trustee, Marilyn O. Marshall has filed objections to each of their plans

and to the applications to approve the compensation of each firm.

The court has heard argument, read the submissions of the parties, and conducted its own

independent research. Although these are two separate chapter 13 cases, the issues and points of

law are nearly equivalent, and because these issues relate to a great many chapter 13 plans and

fee applications presented to this court, the court will issue one decision ruling on both cases.

The court finds that the proposed plans are confirmable but will deny the applications for

compensation without prejudice as explained in this opinion.

## Background

## Cleveland L. Carr

Carr filed a chapter 13 petition in September 2017. He has asked the court to confirm a

plan which will require the chapter 13 trustee to disburse payments first to the trustee and second

to his auto lender, Exeter Financial ("Exeter"), and to his attorney at the same priority.[1] In other

words, Carr's attorneys' fees in the amount of $4,000.00, and Exeter's secured claim in the

amount of $13,100, will be paid at $200 and $348 per month, respectively. To date, Exeter has

not objected to the proposed $348 per month through the life of the plan.

In Carr's case, a fee application was filed a week after the petition seeking approval of

$4,000 in fees.  Along with the application, Carr's attorney, Geraci, filed a Court Approved

Retention Agreement ("CARA") signed by Carr and one of Geraci's attorneys.  The CARA was

signed nearly two weeks before Carr's petition was filed.  The CARA pertinently provided that

the debtor would pay the filing fee of $310 and attorneys' fees of $4,000. It obligated the

attorney to, among other things, "[p]ersonally explain . . . how and when the attorneys' fees and

the trustee's fees are determined and paid." It also obligated the attorney to "[p]ersonally review

with the debtor . . . the completed . . . [chapter 13] plan."

During the briefing on this matter, a detailed affidavit signed by Carr was filed as an

exhibit to one of the pleadings. The affidavit provided that before the filing of the petition, Carr

was informed of the precise terms of Geraci's accelerated compensation under the plan as well as

the detrimental effect it would have on the early plan payments to Exeter. Carr stated that before

---

[1] The last amended plan filed by Carr provided that his attorneys would be paid first while the auto lender
received adequate protection payments. At a point in time after his attorneys had been paid the $4,000 fee
in full, the payments to the auto lender would be paid at a significantly higher amount throughout the
remaining life of the plan. Exeter did not object to the adequate protection. The latest amended plan was
filed a few days before this Memorandum Opinion was issued; it eliminates the lower payments to Exeter
and reduces the larger payments to Geraci. It will accordingly be confirmed following the running of the
notice period unless a new objection is filed by a party in interest.

the filing of the petition, he was made fully aware by Geraci that an early dismissal in his case

would result in it being much more difficult for him to keep his vehicle as a practical matter

because he would be paying more to his attorneys at the beginning of the case and less to the

auto lender until the attorneys' fees were paid in full.

### Antoinette L. Lindsey

The facts are much the same in Lindsey's case. Lindsey filed a chapter 13 petition in

August 2017 and proposed a plan making payments in the amount of $590 per month for 60

months.  During the early months of the case, the plan provides that the chapter 13 trustee will

make adequate protection payments to the car lender, Regional Acceptance ("Regional"), in the

amount of $25.00 per month. Regional has not objected to this amount of adequate protection.

Starting in August of 2018, the payments to Regional increase to $500 per month. During the

period of adequate protection payments, Lindsey's attorneys, Semrad will be paid over $500 per

month until August of 2018.

Just as with Carr's case, Lindsey and her attorney entered into the CARA, which set out

the same basic obligations as in the Carr case. They first entered into the CARA on August 14,

2017 (a week before filing). They executed a new CARA on the date that Lindsey filed her

petition, August 21, 2017.

During the briefing in Lindsey's case, a set of disclaimers initialed by Lindsey and dated

August 14, 2017 (a week before filing) was filed as an exhibit. The disclaimers indicate that

Lindsey understood that Semrad would likely be paid before any of her creditors. A separate

disclaimer indicated, however, that Lindsey understood that Semrad *would*, not likely would, be

paid "before all creditors unless otherwise agreed or ordered by the court." The disclaimers,

however, do not show that Lindsey understood, for example, the practical difficulties an early

3

dismissal would have on her ability to keep her vehicle given the accelerated payment of

attorneys' fees under the plan.

## The Trustee's Objections to the Plans and Applications for Compensation

In both cases, the trustee filed an objection to the attorneys' compensation and an

objection to confirmation of the chapter 13 plan. The trustee objects to the following: (1)

payments made to the secured creditors will not be in "equal monthly amounts," since they

receive only adequate protection for a certain amount of time, and only later do they begin

receiving increased payments on their allowed secured claim; [2] (2) debtors' attorneys in these

cases have not shown that they have benefitted the estate; (3) the attorneys have breached their

fiduciary obligations to the debtors by not disclosing to the debtors that they would be paid ahead

of the debtors' other creditors, particularly the auto lenders; and (4) both attorneys violated Local

Rule 2016–1 because both attorneys had come to an "agreement" with their clients concerning

their compensation, and those agreements were never then reduced to writing, signed by both

parties, and filed with the court pursuant to the requirements of Local Rule 2016–1.

For the reasons discussed below, the chapter 13 plans in both cases will be confirmed.

Compensation in both cases is denied without prejudice. Counsel may refile applications seeking

approval of compensation in conformity with this Memorandum Opinion. A separate order in

both cases will issue.

---

[2] This objection is now only pertinent to Lindsey's case, since the "equal monthly amounts" problem in
Carr's case has been removed with the new plan filed on April 4.

4

## Discussion[3]

### I.    Is the Accelerated Payment of Attorneys' Fees in Chapter 13 Plans Permissible under the Bankruptcy Code in these Cases?

The court must decide whether section 1325(a)(5)(B)(iii)(I) applies where a secured creditor is not objecting to its treatment under the plan. Because the court concludes that it does not, the court does not reach the question as to whether or not that provision is violated when a secured creditor receives post-confirmation payments under the plan that are different in amount. For this reason, the trustee's objection to confirmation of the plan in Lindsey's case is overruled.[4]

### A. The Relevant Statutory Provisions

Section 1325(a)(5) provides in relevant part that:

> with respect to each allowed secured claim provided for by the plan— (A) the holder of such claim has accepted the plan; (B) . . . (iii) if— (I) the property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or (C) the debtor surrenders the property securing such claim to such holder . . . .

For the court to confirm a chapter 13 plan, it must satisfy itself that one of section 1325(a)(5)'s three conditions has been met. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 (2010) (noting that all conditions in section 1325(a) are mandatory); *Johnson v. Home State Bank*, 501 U.S. 78, 87–88 (1991); *In re Andrews*, 49 F.3d 1404, 1409 (9th Cir. 1995) (noting the

---

[3] This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (L). The court has constitutional authority to hear and decide this matter.

[4] The objection in the Carr case has been mooted by a very recently filed plan that removes the "equal monthly amounts" problem. Since there are no relevant objections to Carr's plan currently pending, Carr's plan will be confirmed following the running of the notice period unless a secured creditor such as Exeter objects to the new plan.

use of the disjunctive "or" in section 1325(a)(5)) (quoting *In re Szostek*, 886 F.2d 1405, 1412 (3d

Cir. 1989)).

Section 1326(b) provides in relevant part that:

> Before or at the time of each payment to creditors under the plan, there shall be
> paid— (1) any unpaid claim of the kind specified in section 507(a)(2) of this title .
> . . .

Section 1326(b) sets up a scheme by which administrative expense payments must be made

either before or concurrently with payments to creditors; in other words, initial payments to

administrative expense claimants cannot commence on a date later than the date on which initial

payments to creditors begin. *See In re Maldonado*, 483 B.R. 326, 337 (Bankr. N.D. Ill. 2012);

*but see In re Harris*, 304 B.R. 751, 756–57 (Bankr. E.D. Mich. 2004) (stating that administrative

claimants such as the debtor's attorney must be paid *in full* before payments to secured or

unsecured creditors begin).

The precise workings of section 1326(b), as pertinent to this case, are as follows. First,

the section references unpaid claims "of a kind specified in section 507(a)(2)," which in turn

references the administrative expenses found in section 503(b), with those expenses including

"compensation and reimbursement awarded under section 330(a) of this title." 11 U.S.C. §§

1326(b)(1), 507(a)(2), 503(b)(2). One type of compensation or reimbursement that may be

awarded under section 330(a) is that for the services of a debtor's attorney in a case under

chapter 13. *Id.* § 330(a)(4)(B).[5] Thus, the approved compensation of a debtor's attorney in a

chapter 13 case may be paid under the chapter 13 plan out of the estate, *see id.* § 1306, and that

compensation must be paid under the plan in the manner provided by section 1326(b)(1).[6]

---

[5] This section of the Code is discussed in more depth below with regard to the attorney compensation
issue.

[6] *Compare Lamie v. U.S. Tr.*, 540 U.S. 526, 538–39 (2004) (holding that a debtor's attorney in a chapter 7
case cannot be paid out of the estate unless he/she is employed by the trustee under section 327)).

The question to be answered here is whether a chapter 13 plan may be confirmed where a secured creditor is to continue receiving adequate protection payments under the plan until the debtor's attorneys' fees are paid in full, after which time the payments to the secured creditor under the plan "step up" to an increased amount sufficient to pay off the creditor's claim in the time allotted under the plan. There is no doubt that, in isolation, section 1326(b)(1) allows for the payment of the attorneys' fees prior to the payment of creditors. The difficulty arises where this type of arrangement causes the monthly payments made to the secured creditor under the plan to be unequal, potentially running afoul of section 1325(a)(5)(B)(iii)(I). A further wrinkle is added by the fact that no affected secured creditor has objected to the plan.

### B. Should this Court Apply Section 1325(a)(5)(B) Where no Secured Creditor has Objected to Confirmation of the Plan?

A threshold question to be answered, however, is whether the failure of a secured creditor to object to confirmation of the plan renders section 1325(a)(5)(A) satisfied in these circumstances. If it does, then section 1325(a)(5)(B) would not have any application, *see Andrews*, 49 F.3d at 1409 (noting the disjunctive "or"), and the objection to the accelerated treatment of debtors' attorneys' fees under section 1326(b)(1) on the basis that such treatment causes the monthly payments to certain secured creditors to be unequal would have no merit.

A majority of courts consider section 1325(a)(5)(A) to be satisfied as to the debtor's secured creditors where secured creditors have had proper notice and no secured creditor is objecting. *See, e.g., In re Jones*, 530 F.3d 1284, 1291 (10th Cir. 2008); *In re Lorenzo*, No. BAP PR 15-011, 2015 WL 4537792, at *6 (B.A.P. 1st Cir. July 24, 2015) (citing *In re Flynn*, 402 B.R. 437, 443 (B.A.P. 1st Cir. 2009)), *aff'd*, 637 F. App'x 623 (1st Cir. 2016); *In re Olszewski*, 580 B.R. 189, 192 (Bankr. D.S.C. 2017). The court finds that secured creditors, in this case the auto lenders, have had adequate notice of the debtor's plan in both cases. Neither has objected to the

7

current plans being proposed. Section 1325(a)(5)(A) is therefore satisfied. Because section

1325(a)(5)(A) is satisfied, section 1325(a)(5) is satisfied. *See Andrews*, 49 F.3d at 1409 (noting

the disjunctive "or"). The cramdown requirements housed separately in section 1325(a)(5)(B),

such as section 1325(a)(5)(B)(iii)(I), are simply not implicated. No other independent,

freestanding confirmation requirement found in section 1325(a) is being transgressed by these

plans, nor are these plans violating any other self-executing provision located in the Bankruptcy

Code. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 276–77 (2010).[7]

The trustee's objection to confirmation on the grounds that section 1325(a)(5)(B)(iii)(I) is

being transgressed by this plan is therefore overruled, since no properly noticed secured creditor

is objecting.

## C. Good Faith.

The trustee also argues that these plans have not been proposed "in good faith and not by

any means forbidden by law." *See* 11 U.S.C. § 1325(a)(3). The trustee's objection on this basis is

also overruled.

The trustee argues that the plan in Lindsey's case is not being proposed in good faith

because it proposes to pay attorneys' fees ahead of Lindsey's auto lender.[8] This treatment,

however, is perfectly permissible under section 1326(b)(1). *See In re Maldonado*, 483 B.R. 326,

337 (Bankr. N.D. Ill. 2012); *see also In re Harris*, 304 B.R. 751, 756–57 (Bankr. E.D. Mich.

2004). There is no *per se* rule that a plan proposing to pay attorneys' fees ahead of the debtor's

---

[7] The trustee's cited case, *Matter of Brown*, 559 B.R. 704, is therefore inapposite because there the court *sua sponte* enforced the mandates of section 1322. *Matter of Brown*, 559 B.R. 704, 707 (Bankr. N.D. Ind. 2016) ("A plan that attempts to do what § 1322(b)(2) forbids does not satisfy [the requirement under section 1325(a)(1)] that the plan compl[y] with the provisions of [chapter 13] and with the other applicable provisions of [title 11]."). Section 1322(b)(2) is not implicated in this case.

[8] The plan in Carr's case has been amended so that the auto lender is not being jumped by Carr's attorney's fees.

creditors is a violation of section 1325(a)(3)'s good faith requirement. *In re Crager*, 691 F.3d

671, 675–76 (5th Cir. 2012). To the extent the trustee raises any breach of the attorneys'

fiduciary duties with respect to her section 1325(a)(3) argument, the court notes that such

breaches are more properly addressed by this court in ruling on the attorneys' applications for

compensation. The court otherwise finds that there is no good faith deficiency with respect to the

proposal of this chapter 13 plan. *See In re Rimgale*, 669 F.2d 426, 431–33 (7th Cir. 1982).

**II.    The Attorneys' Fiduciary Duties, Local Rule 2016–1, and the Objections to
         Compensation**

In her objection to compensation, the trustee has argued that the debtors' attorneys'

compensation should be denied for essentially three reasons. First, she argues that they cannot

show that they provided a benefit to the estate. Second, she argues that the attorneys breached

their fiduciary obligations that they owe to their clients, the debtors, because they have not

shown that they have adequately explained the terms of their compensation and the implications

of that compensation on the interests of their clients. Third, the trustee argues that Local Rule

2016–1 was violated in both cases because the attorneys had an understanding with their clients

as to the way in which the attorneys' fees would be paid, and this type of understanding is an

"agreement" in the broad sense of that term as it is used in the Local Rule. This agreement, she

argues, also pertains to compensation, and therefore falls within the Rule requiring its being

reduced to writing, signed by both parties, and filed with the court.

**A.    Chapter 13 Debtor's Attorney Compensation under the Code and in this
        District**

The Code does not require that chapter 13 debtors' attorneys' fees benefit the estate. This

was not always the case, as starting in the early nineteenth century and ending in 1978, a debtor's

attorney was generally entitled to have his compensation paid out of the bankruptcy estate as an

administrative expense only if he could demonstrate that his services had provided a "clear and

substantial benefit to the bankruptcy estate." Michelle Arnopol Cecil, *A Reappraisal of Attorneys' Fees in Bankruptcy*, 98 KY. L.J. 67, 98 (2010); *see also Matter of Lee*, 3 B.R. 15, 17–18 (Bankr. N.D. Ga. 1979) (deciding case under the Bankruptcy Act); *Ex parte Hale*, 11 F. Cas. 178, 179, No. 5,910 (C.C.D.N.H. 1842).

This changed in 1978 with the enactment of the enactment of the Bankruptcy Reform Act,[9] but under the case law that developed, the services of the debtor's attorney were generally still not compensable out of the estate where the services had benefitted only the debtor and had not aided in the administration of the estate in some way. *See, e.g., In re Chas. A. Stevens & Co.*, 105 B.R. 866, 870 (Bankr. N.D. Ill. 1989); *but see In re Deihl*, 80 B.R. 1 (Bankr. D. Me. 1987) (allowing a debtor's attorney to be compensated out of the estate for representing the debtor in a dischargeability adversary proceeding) (relying partially on *Conrad, Rubin & Lesser v. Pender*, 289 U.S. 472, 476 (1933)); *see also In re Lifschultz Fast Freight, Inc.*, 140 B.R. 482, 485–88 (Bankr. N.D. Ill. 1992) (discussing the issue).

In 1994, however, Congress again amended the bankruptcy laws. This time, it modified 11 U.S.C. § 330 to remove any reference to "the debtor's attorney." *Lamie v. U.S. Tr.*, 540 U.S. 526, 529–30 (2004). As a result, the general rule has become that a debtor's attorney in a chapter 7 cannot be compensated out of the estate as an administrative priority claimant unless he/she is employed by the trustee. *See In re Radulovic*, No. BAP.WW-05-1142-SDK, 2006 WL 6810999, at *5 (B.A.P. 9th Cir. Aug. 18, 2006). Congress, however, added a special exception in that same year for debtors' attorneys in chapters 12 and 13 only. *Lamie*, 540 U.S. at 540–41. That Code provision reads:

---

[9] *See Reappraisal*, 98 KY. L.J. at 98 (noting that Congress "sharply deviated" from this standard when it enacted the 1978 Bankruptcy Reform Act).

In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B). It has, therefore, become clear that (1) debtors' attorneys may be compensated out of the estate in chapters 12 and 13, and that (2) reasonable compensation may be allowed by the court, based on a consideration of the relevant factors, regardless of any separate benefit to the estate or lack thereof. *See, e.g., In re Tahah*, 330 B.R. 777, 782–83 (B.A.P. 10th Cir. 2005); *In re Walsh*, 538 B.R. 466, 474–75 (Bankr. N.D. Ill. 2015).

If the debtor's attorneys' fees are allowed by the court, they are entitled to administrative expense status. *See* 11 U.S.C. § 503(b)(2); *In re Maldonado*, 483 B.R. 326, 337 (Bankr. N.D. Ill. 2012). With that status, those fees become entitled to payment out of the estate at second priority. 11 U.S.C. § 507(a)(2); *Maldonado*, 483 B.R. at 337. In chapter 13, that means that the plan *must* provide for the fees' payment in full over time, unless the attorney agrees otherwise. 11 U.S.C. § 1322(a)(2); *Maldonado*, 483 B.R. at 337. The payments for the fees must be made either before or concurrently with any payments to creditors, including secured creditors. 11 U.S.C. § 1326(b)(1); *Maldonado*, 483 B.R. at 337.

The bankruptcy court has an independent duty to review fees for reasonableness before allowing those fees to be paid out of the estate as an administrative expense. *In re Eckert*, 414 B.R. 404, 410 (Bankr. N.D. Ill. 2009). Ordinarily, the bankruptcy court must approve compensation to be paid out of the estate based on the factors set forth in section 330, with those factors mirroring those used in a traditional lodestar analysis. *In re Sullivan*, 674 F.3d 65, 69 (1st Cir. 2012). The court, however, is not required to perform a lodestar analysis, "and bankruptcy courts have increasingly adopted systems under which attorneys for chapter 13 debtors can be

awarded a presumptively reasonable standard fee for each case." *In re Brent*, 458 B.R. 444, 450

(Bankr. N.D. Ill. 2011).

The court in *Brent* extensively detailed the shift to presumptively reasonable attorneys'

fees in chapter 13 practice both nationally and locally. These presumptively reasonable fees are

called "no look" fees because they are awarded without any sort of detailed fee application being

submitted to the court. *Id.* The award of the fee usually depends on whether or not the attorney

and debtor entered into a court approved agreement detailing the obligations of both the attorney

and the debtor. *Id.* "As such, the flat fee represents a kind of agreement not only with the debtor

but with the court: in exchange for the attorney's *commitment* to perform specified legal services

for the debtor, the court awards a flat fee and dispenses with the usual application." *Id.* (emphasis

added).

Given the large number of chapter 13 cases and their generally routine nature, the shift to

the no-look fee "has proven immensely advantageous to both the courts and bar." *Id.* This regime

helps attorneys because they no longer have to maintain extensive records and prepare detailed

fee applications for every case. *Id.* The no-look fee also incentivizes the "efficient practice of

law." *Id.* Further, it aids the court because it allows the court to avoid the administratively

burdensome task of reviewing fee applications in every chapter 13 case, a task that might more

accurately be described as "inconceivable" given the large volume of such cases. *Id.* (internal

quotations omitted).

There are a number of local rules relevant to no look fee compensation in this district.

Two local rules are considered in detail below in relation to the trustee's claim that one of these

rules (Local Rule 2016–1) has necessarily been violated in these cases. Suffice it to say for now

that this district still utilizes the same procedure described generally above by the court in *Brent*:

12

if the attorney and debtor enter into the Court Approved Retention Agreement (and no other agreement), and if the attorney does not seek more than a $4,000 fee, then the attorney is presumptively entitled to the requested fee and does not have to submit a detailed fee application in order to be awarded the fee as an administrative expense to be paid out of the bankruptcy estate.

### B.      Fiduciary Duty Violations

The court begins first with the trustee's question as to whether or not the attorneys have violated any fiduciary obligations they owe to their clients in seeking payment of fees on an accelerated basis under their respective chapter 13 plans with the disclosures that were given in these cases. The court concludes that in these cases, since the cases are consumer chapter 13 cases where the attorney is to be paid at least partly over time pursuant to the chapter 13 plan, the attorneys had a minimum duty to disclose the negative ramifications of an early dismissal on the interests of the debtor prior to or simultaneously with entering into the retention agreement. Pertinently in these cases, this means that they had a duty to disclose that, because attorney's fees would be paid ahead of or concurrently with the debtors' auto lenders, an early dismissal of the chapter 13 case might or would, depending on when exactly the dismissal happened, significantly impair each debtor's ability to keep his/her vehicle. Though this duty was imposed by Illinois law in these cases, its existence and breach is relevant only to this court's analysis of the attorneys' requests for compensation under Bankruptcy Code sections 329 and 330.[10]

As a threshold matter, the trustee is correct to look to Illinois law in raising this objection. *See Sears, Roebuck & Co. v. O'Brien*, 178 F.3d 962, 966–67 (8th Cir. 1999) ("[W]hile federal

---

[10] In no way does this court conclude, for example, that the attorneys' agreements for compensation are presumptively fraudulent under Illinois law under circumstances where the duty to disclose exists.

13

bankruptcy law is expansive, Congress has not exclusively regulated the relationship of private

lawyers and clients . . . . On the contrary, that arena is particularly one of local concern . . . ."); 

*see also Leis v. Flynt*, 439 U.S. 438, 442 (1979) (per curiam); *In re Liou*, 503 B.R. 56, 67–68

(Bankr. N.D. Ill. 2013) (defining the fiduciary relationship by reference to Illinois law).

A violation of Illinois fiduciary law may render the compensation sought excessive and,

therefore, unreasonable. This is because breaches of a fiduciary duty owed to the client "can

diminish the value of services to a client . . . ." *In re Martin*, 197 B.R. 120, 127 (Bankr. D. Colo.

1996); *see also* 11 U.S.C. §§ 329(b), 330(a)(4)(B) (noting that court looks to "other factors" set

forth in section 330 in allowing "reasonable compensation"), 330(a)(3).

Even where a presumptively reasonable no-look fee is sought, a "reasoned objection"

from a party in interest shifts the burden of proof back onto the fee-claimant, who must establish

the reasonableness of the fees sought under section 330. *In re Crager*, 691 F.3d 671, 677 (5th

Cir. 2012). Since the trustee is a party in interest, *see id.*, and since the objection is reasoned, the

court concludes that the burden is on both Semrad and Geraci to prove their entitlement to

compensation in these cases. Further, the court has the inherent authority to sanction the

attorneys who practice before it for serious breaches of the fiduciary duties that they owe to their

clients, regardless of any diminution in the value of the services provided to the debtor. *Matter of

Arlan's Dep't Stores*, Inc., 615 F.2d 925, 943 (2d Cir. 1979); *In re Vann*, 136 B.R. 863, 869 (D.

Colo. 1992), *aff'd*, 986 F.2d 1431 (10th Cir. 1993).

The trustee correctly points out that "the attorney-client relationship constitutes a

fiduciary relationship as a matter of law." *In re Winthrop*, 219 Ill. 2d 526, 543, 848 N.E.2d 961,

972 (2006). "As fiduciaries, attorneys owe to their clients 'the basic obligations of agency:

loyalty and obedience.'" *Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 9, 816 N.E.2d 272, 277

14

(2004) (quoting RESTATEMENT (SECOND) OF AGENCY § 14N, cmt. a, at 80 (1958)); *accord*

*Comm'r v. Banks*, 543 U.S. 426, 436 (2005) (stating that the relationship between a client and an

attorney "is a quintessential principal-agent relationship"). "When, in the course of his

professional dealings with a client, an attorney places personal interests above the interests of the

client, the attorney is in breach of his fiduciary duty by reason of the conflict," *Doe v. Roe*, 289

Ill. App. 3d 116, 122, 681 N.E.2d 640, 645 (1997), and this is because, in that scenario, the

attorney, as an agent of the client, has violated his/her duty "to act solely for the benefit of the

principal in all matters connected with his agency." RESTATEMENT (SECOND) OF AGENCY § 387

(1958); *see also Kochorimbus v. Maggos*, 323 Ill. 510, 518, 154 N.E. 235, 238 (1926) ("A party

may voluntarily assume a confidential relation towards another, and, if he does so, he cannot

thereafter do any act for his own gain at the expense of that relation.").

On the other hand, "most fiduciary relationships are established by contract and are not

eleemosynary." *Maksym v. Loesch*, 937 F.2d 1237, 1242 (7th Cir. 1991) (applying Illinois law).

That is to say, the fees to be paid to the attorney in consideration for the attorney's services on

behalf of the client are "matters of contract," and "the broader scope of fiduciary duty . . . does

not apply with full force when the attorney's compensation is the issue." *United States v.

Weimert*, 819 F.3d 351, 369 (7th Cir. 2016) (citing *Maksym*, 937 F.2d at 1242); *A Sealed Case*,

890 F.2d 15, 17 (7th Cir. 1989). As one court has noted in considering a related question in the

context of chapter 13 attorney compensation, "the fact that counsel seeks to be paid for services

rendered does not create a conflict of interest. If that [were] the case, no attorney could ever be

paid for any work performed for a client." *In re Younger*, 360 B.R. 89, 94–95 (Bankr. W.D. Pa.

2006).

Thus, the court will treat the matter of the attorney's compensation, at least as between the debtor and the attorney, as one of contract. Here it is hard to say that, in seeking compensation out of the estate as an administrative expense in a manner perfectly allowable by the Code, *see* 11 U.S.C. § 1326(b)(1), the attorneys breached the contract they had entered into with the debtors concerning their fees. An agreement for attorney compensation constitutes a contract that is interpreted much as any other contract. *Bard v. Harvey*, 74 Ill. App. 3d 16, 19, 392 N.E.2d 371, 374 (1979). "The primary goal of contract interpretation is to give effect to the intent of the parties." *Salce v. Saracco*, 409 Ill. App. 3d 977, 981, 949 N.E.2d 284, 288 (2011). "In determining the intent of the parties, a court must consider the document as a whole . . . ." *Id.*

The agreements submitted in these cases show that no (or very little) compensation had been paid up front, and an express provision provides that "the attorney . . . may not receive fees directly from the debtor after the filing of the case." If the attorney received nothing (or almost nothing) up front, and could receive nothing directly from the debtor after filing, then how could the parties have expected the attorney to have been paid except out of the bankruptcy estate pursuant to the provisions of the chapter 13 plan, where those provisions were also permissible under the Bankruptcy Code? Other parts of the agreement confirm this as well:

> If the case is dismissed after approval of the fees and expenses but before payment of all allowed fees and expenses, the order entered by the Bankruptcy Court allowing the fees and expenses is not a judgment against the debtor for the unpaid fees and expenses based on contract law or otherwise.

That is, the parties have agreed that the order to be entered by the Bankruptcy Court operates to allow the unpaid fees to be paid from the estate under the plan only, and does not serve as an independent basis for the attorney to collect unpaid fees outside of the particular bankruptcy case for which the compensation agreement had been entered into.

16

In light of express provisions such as these, it is not a leap to conclude that the parties intended the attorney to be paid under the plan pursuant to plan provisions that were also lawful under the Bankruptcy Code.[11] After all, "[w]hen the subject matter of the contract between the parties lies in an area covered by federal law, they necessarily adopt, as a portion of their agreement, the applicable provisions of the particular Act of Congress." 11 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 30:20, at 280 (4th ed. 2012); *see also Broenen v. Beaunit Corp.*, 440 F.2d 1244, 1249 (7th Cir. 1970) ("It is an ancient principle of contract law that parties are presumed to have contracted with knowledge of and consistent with the law in effect at the time of execution of a contract."); *Vokal v. United States*, 177 F.2d 619, 625 (9th Cir. 1949) ("Both parties to a contract are presumed to know the law in respect to which the contract is made. There is no presumption of ignorance on one side and knowledge on the other.") (citing *New York v. Phinney*, 178 U.S. 327, 342 (1900)).

That is not to say that the law of fiduciary obligations has nothing to add here — far from it. Traditionally, and still as a general rule, a person does not owe a fiduciary duty to another person where they are settling on the terms of the compensation to be paid in exchange for the former agreeing to provide and so providing services in a fiduciary capacity to the latter. *See Elmore v. Johnson*, 143 Ill. 513, 525, 32 N.E. 413, 416 (1892). Where that general rule holds, the agent-to-be owes no fiduciary duty to act fairly, to completely disclose all the details of the compensation arrangement, nor to ensure that the principal-to-be completely understands those

---

[11] While the attorney may have had this right as a matter of contract based on the parties' presumed intent, it would seem that the client always retained the right, under agency law, to terminate the attorney-client relationship and/or to limit the attorney's actual authority to draft and submit a plan on the client's behalf that would pay the attorney's fees in a particular manner. *See, e.g.*, RESTATEMENT (SECOND) OF AGENCY § 118 & cmt. b (1958). The affidavit submitted in the Geraci case tends to show that Carr was aware of the inherent control and power he maintained over the relationship.

details. *See Maksym v. Loesch*, 937 F.2d 1237, 1242 (7th Cir. 1991). The two deal with one

another at arms-length. *Elmore*, 143 Ill. at 525, 32 N.E. at 416.

The Illinois Supreme Court has made it clear, however, that pre-agency fiduciary

relationships may be found in appropriate cases. *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d

33, 44–46, 643 N.E.2d 734, 740–41 (1994); *Martin v. Heinold Commodities, Inc.*, 117 Ill. 2d 67,

79, 510 N.E.2d 840, 845 (1987). It has done so by adopting part of the Restatement (Second) of

Agency, *id.*, which states as follows:

> A person is not ordinarily subject to a fiduciary duty in making terms as to
> compensation with a prospective principal. If, however, *as in the case of attorney
> and client*, the creation of the relation involves peculiar trust and confidence, with
> reliance by the principal upon fair dealing by the agent, it may be found that a
> fiduciary relation exists prior to the employment and, if so, the agent is under a duty
> to deal fairly with the principal in arranging the terms of the employment.

RESTATEMENT (SECOND) OF AGENCY § 390 cmt e. (1958) (emphasis added). Current Illinois law

therefore allows for a pre-agency fiduciary relationship, and the concomitant disclosure duties

imposed thereby, to be found in appropriate cases, such as those where an attorney-client

relationship is being created.

In light of this present state of Illinois law, it is appropriate to look to the specific

provisions of the Restatement (Third) of the Law Governing Lawyers that pertain to the

informational disclosures that should be given by attorneys when entering into a fee contract,

since it can fairly be concluded that the types of informational disclosures delineated in that

Restatement are the types of disclosures that would reasonably affect a prospective client's

judgment in entering into the agreement.[12] *See* RESTATEMENT (SECOND) OF AGENCY § 390

---

[12] That is, the precise scope of the duty of disclosure and fair dealing in this particular type of relationship
is best defined by reference to the Restatement that deals specifically with that relationship. *See generally
SEC v. Chenery Corp.*, 318 U.S. 80, 85–86 (1943) (noting that the scope of a fiduciary obligation in a
particular setting must be precisely defined).

(1958)). That Restatement notes: "In entering a contract at the outset of a representation, the lawyer must explain . . . the contract's implications for the client." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 18 cmt. d (2000). In other words, if the attorney is to be compensated by way of the fee contract in consideration for acting as a fiduciary, the terms of that compensation cannot remain a mystery to the client; the attorney "must lay bare the truth, without ambiguity or reservation, in all its stark significance." *Cent. Ry. Signal Co. v. Longden*, 194 F.2d 310, 318 (7th Cir. 1952) (quoting *Wendt v. Fischer*, 154 N.E. 303, 304 (N.Y. 1926) (Cardozo, J.)).

To be clear, the court is finding in these two cases that a fiduciary relationship existed between the attorneys and Carr and Lindsey before entering into their retention agreements such that the attorneys had a heightened duty to disclose the implications of their compensation. It is fair to conclude that the court will find the same duty in like future cases that come before it. It is not fair to conclude that the court is implying that Illinois law categorically imparts a pre-retention fiduciary duty in all relationships that later become attorney-client relationships. *See Maksym v. Loesch*, 937 F.2d 1237, 1242 (7th Cir. 1991) ("Fiduciary law does not send the dark cloud of presumptive impropriety over the contract that establishes the fiduciary relationship in the first place and fixes the terms of compensation for it.").

These findings are warranted in these cases for three reasons. First, these debtors are debtors with primarily consumer debts. *See* 11 U.S.C. §§ 101(8), 101(3). A pre-agency fiduciary duty is designed to protect "vulnerable and unknowledgeable" parties. *See Meyer Grp., Ltd. v. United States*, 115 Fed. Cl. 645, 652 (2014) (generalizing that a branch of the government is a sophisticated party and is therefore not the appropriate beneficiary of a pre-agency fiduciary duty). Congress has signaled that consumer debtors comprise one particular class of vulnerable

and unknowledgeable persons by enacting, for example, provisions in the Code mandating that

such persons be positively provided with information concerning, for example, the benefits and

costs of proceeding under each chapter of the Code. *See* 11 U.S.C. §§ 101(3), 101(8),

342(b)(1)(A), 527(a)(1), (b); *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229,

235-239 (2010) (concluding that attorneys are debt relief agencies and are subject to various

statutory disclosure requirements when providing bankruptcy assistance to people with primarily

consumer debts). The court therefore finds it appropriate draw the conclusion that the debtors in

these cases are less knowledgeable, more vulnerable, and therefore more likely to repose more

trust and confidence in their attorney prior to entering into any fee arrangement, based on the

types of debts owed in these cases.

Second, these agreements were signed on the eve of bankruptcy. Prospective bankruptcy

debtors are often anxious and desperate to retain houses, tenancies or leases, and automobiles.

That these debtors later filed for bankruptcy is more evidence of their vulnerability and more

evidence that the creation of the attorney client relationship, assuming that event did not happen

prior to the signing of the retention agreement, involved the client's placing a peculiar trust and

confidence in the attorney. The law has long recognized the particular risk of attorney

overreaching in the run-up to a bankruptcy filing. *See* 11 U.S.C. § 329; *In re Wood*, 210 U.S.

246, 253 (1908); *In re Michaelson*, 222 B.R. 595, 597 (Bankr. C.D. Ill. 1997).

Finally, even where a prospective principal is not vulnerable and unknowledgeable, there

is a heightened reliance on fair dealing from a prospective agent in setting the terms of the

compensation where the implications of the fee structure on the interests of the client can only be

known based on information within the control of the prospective agent. Here, that heightened

reliance on fair dealing is present because the implications of the attorneys' fees on the clients'

20

interests could only be known by reference to the Bankruptcy Code's provisions for payment of attorney's fees out of the estate and from the provisions of the chapter 13 plan. This type of knowledge belongs peculiarly to the attorney and not at all to the client, since one part of the attorney's job is generally to understand the workings of the law. *See* RESTATEMENT (SECOND) OF AGENCY § 390 cmt. e (1958) (noting the significance of the prospective principal's reliance on fair dealing from the prospective agent); *see also* Deborah A. DeMott, *Breach of Fiduciary Duty: On Justifiable Expectations of Loyalty and Their Consequences*, 48 ARIZ. L. REV. 925, 950 (2006) (noting the relevance of unique access to information). This type of reliance might not be present in a case where the attorney's fees are simply agreed to be paid as a lump sum up front before filing; there, the implications of the fee on the client's interests would appear to be quite clear.

The court is well aware that the CARA already contractually obligates the attorney to explain how attorney's fees are determined and paid. To the extent the attorney fulfills the fiduciary obligation to ensure that the client understands the implications of the payment of attorney's fees, the attorney will more than likely simultaneously fulfill that contractual obligation. To the extent the attorney does not fulfill the fiduciary obligation in entering into the CARA, but later explains how the fees are paid and ensures that the client fully understands the implications of how those fees are paid, the client might be taken to have waived any breach of the attorney's fiduciary obligation in entering into the CARA by continuing the representation.

In sum, the court concludes that imposing on the attorneys a fiduciary obligation to deal fairly and make a full disclosure as to compensation prior to entering into the retention agreement is appropriate in these cases. Semrad has not shown that the implications of its compensation structure, in that an early dismissal would result in her being unable to retain her

vehicle as a practical matter, were appreciated in all of their stark significance by Lindsey.

Geraci, by contrast, has, since its detailed affidavit shows Carr understood, at least prior to

filing,[13] that an early dismissal would result in a practical inability to keep his vehicle. The court

therefore sustains the trustee's objection as to Semrad and overrules it as to Geraci. Because

Semrad's breach occurred before any services were provided, however, the court cannot find that

the value of services provided to the debtor was diminished by the breach. Moreover, in light of

Semrad's good faith throughout this process and the fact that it did make *some* disclosures to the

debtor, the court declines to exercise its inherent power to deny compensation for an attorney's

breach of a fiduciary duty. Both applications for compensation will instead be denied for having

violated Local Rule 2016–1 as discussed below.

### C.  Violation of Local Rule 2016–1

The trustee also argues that the attorneys violated Local Rule 2016–1 when they failed to

sign and file with the court their understandings that they had with the debtor regarding the

manner in which their payment would be made under the plan. The trustee is correct.

The rule reads:

> Every *agreement* between a debtor and an attorney for the debtor that pertains,
> *directly or indirectly*, to the *compensation* paid or given, or to be paid or given, to
> or for the benefit of the attorney must be in the form of a written document signed
> by the debtor and the attorney. Agreements subject to this rule include, but are not
> limited to, the Court-Approved Retention Agreement, other fee or expense
> agreements, wage assignments, and security agreements of all kinds. Each such
> agreement [must be disclosed to the court].

---

[13] While the CARA was entered into on September 14, 2017, the petition was not filed until September 29, 2017. The affidavit submitted only states that the client understood the contract's implications prior to filing. If the understanding came before or concurrently with September 14, 2017, then, under the court's reasoning, the attorney fulfilled any pre-agency fiduciary disclosure obligation it may have had to the client. If the understanding came after September 14, 2017, then the attorney's pre-agency fiduciary obligation to disclose was breached, but the client ratified the attorney's conduct by acknowledging a full understanding of the information regarding the contract's implications, thus effectively curing the attorney's breach. *See* 1 FLOYD R. MECHEM, A TREATISE ON THE LAW OF AGENCY § 1222, at 894 (2d ed. 1914) (noting that a breach of a fiduciary duty may be waived where the principal has full and complete information); *see also* RESTATEMENT (SECOND) OF AGENCY §§ 390 cmt. h., 416 (1958).

Local Rule 2016–1 (emphasis added). The term "agreement" is not defined. The court interprets

the meaning of a local rule in the same way in which it interprets the meaning of a statute. *See*

*Shamshoum v. Bombay Cafe*, 257 F. Supp. 2d 777, 780 (D.N.J. 2003) (applying the canons of

construction to the court's local rules); *see also Samsung Elecs. Co. v. Rambus, Inc.*, 440 F.

Supp. 2d 495, 506 (E.D. Va. 2006) (applying the canons to the Federal Rules of Civil Procedure)

(citing *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 540

(1991)).

Where the meaning of a term is plain and unambiguous, judicial inquiry is at an end, and

the plain meaning of the term must be enforced. *Mosley v. City of Chicago*, 252 F.R.D. 445, 449

(N.D. Ill. 2008); *see also Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). To

ascertain the plain meaning of a term, the court looks to references such as Black's Law

Dictionary. *See, e.g.*, *United States v. Cook*, 850 F.3d 328, 332 (7th Cir.), *cert. denied*, 138 S. Ct.

135 (2017).

Black's Law Dictionary defines "agreement" pertinently as follows:

> A mutual understanding between two or more persons about their relative rights
> and duties regarding past or future performance; a manifestation of mutual assent
> by two or more persons.

*Agreement*, BLACK'S LAW DICTIONARY 81 (10th ed. 2014).

Black's goes on to say:

> The term 'agreement,' although frequently used as synonymous with the word
> 'contract,' is really an expression of greater breadth of meaning and less
> technicality. Every contract is an agreement; but not every agreement is a contract.
> In its colloquial sense, the term 'agreement' would include any arrangement
> between two or more persons intended to affect their relations (whether legal or
> otherwise) to each other. An accepted invitation to dinner, for example, would be
> an agreement in this sense; but it would not be a contract because it would neither
> be intended to create, nor would it in fact crate, any legal obligation between the
> parties to it. Further, even an agreement which is intended to affect the legal

relations of the parties does not necessarily amount to a contract in the strict sense of the term. For instance, a conveyance of land or a gift of a chattel, though involving an agreement, is . . . not a contract; because its primary legal operation is to effect a transfer of property, and not to create an obligation.

*Id.* (quoting 2 STEPHEN'S COMMENTARIES ON THE LAWS OF ENGLAND 5 (L. Crispin Warmington ed., 21st ed. 1950)). Thus, agreement is broader than contract: it means any mutual arrangement or understanding between two people that is intended to alter or that has the effect of altering the relations between them, whether legal or otherwise, and whether or not the arrangement or understanding has the effect of creating binding legal obligations between them as a contract does.

The understandings that existed in these cases surely fall within this definition. In disclosing to the debtors that the attorneys would be paid under the plan ahead of the debtors' creditors, and in the debtors' acknowledgement of that fact and subsequent acquiescence, there was a mutual understanding between the parties at least of the attorneys' rights going forward to the money that the debtor would be paying into the plan, and, in Geraci's case, of the actual effect of the debtor's future performance under the plan on the status of the debtor's other obligations owed to creditors. These understandings, then, were agreements, and they clearly pertained to compensation.

Yet they were never signed by both and filed with the court as required by the Local Rule. The attorneys' reason for not disclosing these agreements initially as required is roughly that, based on an interpretation of the Local Rules regarding no-look fees, the CARA is the only agreement required to be disclosed, and indeed that if they had filed any other agreement other than the CARA, they would have lost their ability to seek a no-look fee. They also reason in any event that these understandings were not separate agreements within the meaning of Local Rule 2016–1.

24

The attorneys are incorrect. Local Rule 2016–1 makes it clear by its terms that *every* agreement pertaining to compensation, including (but not limited to) the CARA, must be disclosed. These understandings are within the definition of agreement in Local Rule 2016–1.

Further, Local Rule 5082–2(C), which specifically governs the award of a no-look fee in chapter 13 cases, states as follows:

> (1) If debtor's counsel and the debtor have entered into the Court-Approved Retention Agreement, counsel may apply for a Flat Fee not to exceed the amount authorized by the applicable General Order [$4,000]. If the Court-Approved Retention Agreement has been modified in any way, a Flat Fee will not be awarded, and all compensation may be denied.

Stop there. Did these understandings modify the CARA? Surely not. "Modify" is defined as "[t]o make somewhat different." *Modify*, BLACK'S LAW DICTIONARY 1157 (10th ed. 2014). The understandings did not make the CARA different; the terms of the CARA remained the same as before. The mutual understandings in these cases regarded the attorney being able to seek payment on an accelerated basis out of the estate under the plan. These understandings did not change the parties' rights and obligations under the CARA, except insofar as the understanding may itself have come about by way of the attorney also fulfilling his/her explanatory duty under the CARA. In that sense, by explaining the terms of the compensation and coming to an understanding, the CARA was modified in that one of the duties it had imposed had been performed, but this did not work a change to its very terms. This is so even though an obligation created by those terms may have been satisfied.

Local Rule 5082–2(C) provides further:

> (2) If debtor's counsel and the debtor have not entered into the Court-Approved Retention Agreement, the Form Fee Application must be accompanied by a completed Form Itemization.

This part has no application, since the attorney and the debtor did enter into the CARA in these cases.

The rule finally provides that:

(3) The Flat Fee will not be awarded and all compensation may be denied if, in addition to the Court-Approved Retention Agreement, the debtor and an attorney for the debtor have entered into any other agreement in connection with the representation of the debtor in preparation for, during, or involving a Chapter 13 case, and the agreement provides for the attorney to receive:

(a) any kind of compensation, reimbursement, or other payment; or

(b) any form of, or security for, compensation, reimbursement, or other payment that varies from the Court-Approved Retention Agreement.

It would be fair to conclude that the meaning of agreement in this Rule is the same as in Rule 2016–1. Therefore, the attorneys and debtors did enter into an agreement in connection with the representation of the debtor in these chapter 13 cases. That agreement was the understanding that they had regarding the manner in which the attorneys' compensation would be paid under the plan, specifically that it would or might be paid ahead of the debtor's creditors. In Geraci's case, the understanding also encompassed the specific implications of that fact.

Did this agreement also *provide* for the attorney to receive any kind of compensation, reimbursement, or other payment? No. In these cases, the only agreement that *provided* for the compensation of the attorney was the CARA. Since the CARA itself contractually allows the attorney to seek payment of the fees out of the bankruptcy estate pursuant to the Code-compliant provisions of the chapter 13 plan, any understanding between the attorney and the debtor regarding the mechanics of the compensation was just that: an understanding. Having that understanding might satisfy any fiduciary obligations that the attorney may owe in a given case when coming to an agreement on compensation, and/or it might satisfy certain contractual

obligations under the CARA, but the understanding would in no way provide for what has already been established by the CARA itself.[14]

The end result of this analysis is that any understanding that the attorney and debtor have regarding the precise manner of the attorneys' compensation under the chapter 13 plan, whether that understanding comes about (1) as a result of the attorneys' compliance with any fiduciary obligations that he/she may owe, and/or (2) as a result of the attorneys' compliance with the contractual provisions contained in the CARA, is subject to the requirements of Local Rule 2016–1. Compliance with this Local Rule protects both the client and the attorney in forcing them to reduce to writing their understanding and helps to avoid any future surprises as to the precise way in which fees are paid.

Local Rule 2016–1 was not complied with in these cases. Though agreements existed, they were not disclosed. Because of this fact, the attorneys' certifications under Local Rule 5082–2(B)(2) were false and hence, under that rule, neither firm is entitled to have their compensation approved.

## **Conclusion**

The plans proposed are both confirmable and appropriate orders will be entered confirming each plan. The fee applications filed in both cases will be denied without prejudice and may be refiled subject to disclosure of the agreements between the debtor and counsel as to the compensation. Each fee application filed before this court, whether the fees are to be paid

---

[14] It could be argued that, because compensation may be denied if the attorney does not show that a fiduciary obligation was complied with, the separate understanding regarding the implications of the attorney's compensation actually does "provide" for the attorney's compensation since it satisfies the attorney's fiduciary obligation, and therefore it could be argued that the separate understanding runs afoul of Local Rule 5082–2(C)(3). The Rule, however, is concerned with "other agreement[s]" providing for compensation. The separate understanding, even if it satisfies a fiduciary obligation, would not, *on its own*, provide for the attorney's compensation, since that understanding simply cannot exist except by specific reference to the attorney's contractual right to compensation under the CARA.

before the claims of creditors or simultaneously with the claims of creditors, must have attached

to it the agreements required by Local Rule 2016–1.

ENTER:

Deborah L. Thorne
United States Bankruptcy Judge

Dated:  April 10, 2018